SOCIOLOGICAL RESEARCH FILM CORPORATION, Plaintiff, *v.* THE CITY OF NEW YORK and RHINELANDER WALDO, as Commissioner of the Police Department of the City of New York, Defendants.

(Supreme Court, New York Special Term, January, 1914.)

Criminal law — when public exhibition not entitled to protection of court of equity — persons engaged in licensed callings who abuse their license relegated to tribunal where such matters belong.

The court has not the power to interfere with the police in enforcing the criminal law.

The public exhibition for money in a theatre of scenes supposed to transpire in houses of prostitution is not entitled to the protection of a court of equity.

Where persons engaged in merely licensed callings, as distinguished from concededly lawful lines of business, abuse their license and run foul of the criminal law, a court of equity will relegate them to the tribunal where such matters belong.

Supreme Court, January, 1914.                    [Vol. 83.

APPLICATION for an injunction *pendente lite.*

Robert L. Turk, for plaintiff.

Archibald R. Watson, for defendants.

GAVEGAN, J.   This is an application brought by the plaintiff against the defendants for an injunction *pendente lite,* wherein it is prayed that the defendants be enjoined and restrained from interfering with the production known as '' The Inside of the White Slave Traffic,'' now being given in the Park Theatre, located at Fifty-ninth street and Eighth avenue, in the borough of Manhattan, city of New York.   The order to show cause served on the defendants stays the de- fendants from interfering or taking action against the parties conducting such performance until the further order of this court.   On the argument of the motion December twenty-sixth, the defendants' application to vacate said temporary stay was granted, in view of the law as it stands in this department, to the effect that this court has not the power to interfere with the police in enforcing the criminal law.   Decision was reserved, however, on plaintiff's application for an injunction *pendente lite,* in view of apparently con- flicting decisions of the Appellate Division in differ- ent departments in this state, and in view of the char- acter of the exhibition in question, which is susceptible of removal to other judicial departments.   I shall therefore consider the application with regard to the sufficiency of the facts.   The performance as conducted by the plaintiff in said theatre is one consisting of moving picture films cast upon canvas by a moving picture machine and depicting what is alleged to be a play known as '' The Inside of the White Slave Traffic,'' describing the working of prostitutes on the

streets of several cities in this country, the inside of houses of prostitution, the alleged methods of so-called cadets, and the unfortunate women who are living within their influences. Some of the films, I repeat, depict scenes supposed to be enacted in a house of ill fame where women are subjected to involuntary prostitution. As it is well known that to maintain such a place is in itself a criminal offense, I am unable to perceive why the public exhibition for money of scenes supposed to transpire therein should be entitled to the protection of a court of equity. It is contended by the plaintiff, in affidavits furnished by disinterested individuals whose motives it is not within the province of this court to question, that the pictures contain a great moral lesson to fathers and mothers, calculated to impress upon their minds the urgent need of protecting their daughters from the influence of evil associations. The answer to this is that the exhibition has not been confined to fathers and mothers; that there is no evidence before me that the owners thereof propose or desire to so confine it, and that the evidence shows they are conducting the enterprise not for the uplift of public morals, but for private gain. Furthermore, section 1140-a of the Penal Law, which defendants claim has been violated in this case, relates particularly to exhibitions " which would tend to the corruption of the morals of *youth* or others," and the defendants are acting within their rights and duty in attempting to prevent the continued violation of that statute. It might be possible to find individuals of such morbid curiosity that they would be willing to pay an admission price to see the inside workings of a sewer, and others of such avaricious enterprise that they would be ready to capitalize such morbid curiosity and furnish the exhibition for a price, and still others, among the well-meaning and unwary, who would lend

Supreme Court, January, 1914. [Vol. 83.

their sanction and approval to the idea in the belief that such an exhibition by its horrible example might tend to improve the habits of cleanliness of some in the audience and that the public ought to know about it in any event. If the illustration is disagreeable, it is no more so than the facts with which I have to deal. It would be no more absurd under the law as it now stands, and even less reprehensible because involving no criminal suggestion, for the promoters of such a scheme to pray to a court of equity for protection against interference by the police. Needless to say, the prayer would be denied, and municipalities, while directing proper attention to improved methods of salvage, would, nevertheless, continue in their efforts to protect the public health by confining and disposing of waste matter through underground passages. The theatre in question is operated pursuant to a license granted by the city authorities and subject to the inspection and supervision of such authorities. I doubt if the owners of the plaintiff corporation would have had the audacity to undertake the public display of certain revolting details contained in the exhibition, knowing, as they must, that their business exists by mere sufferance of the law, if it were not for the general discredit in which they evidently but erroneously believe the police to be held in this city. The police as a body is entitled to, and I believe has, the confidence of the community at large, notwithstanding the reflections now and then cast upon it by the conduct of some of its unworthy members. It would be equally unjust, of course, to stigmatize theatrical managers as a class because of exhibitions of depravity and inordinate greed for gain on the part of some of its members. I have been unable to find in any reported case in this department a single instance of police interference with theatrical productions which was not

justified by such disregard for conventional decency on the part of the owners thereof as to amount to a violation of law. When persons engaged in merely licensed callings, as distinguished from concededly lawful lines of business, abuse their license and run foul of the Penal Law, they will be relegated by a court of equity to the tribunal where such matters belong. The fact that the plaintiff's business is conducted by virtue of a license renders it unnecessary, in my opinion, to undertake any analysis of conflicting decisions on the question of jurisdiction. After a careful reading of the affidavits presented, I am satisfied, on the merits, that the plaintiff would not succeed at the trial of the action in obtaining the relief which it seeks, that the exhibition in question, or at least parts of it, tend to deprave and corrupt the morals of those whose minds are open to such influences, and that therefore the application for an injunction *pendente lite* should be denied, with costs.

Application denied.